IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

        Appellant,

v.                                                                                          Crim. No. 4:04cr159

JUSTIN R. CLARK,

        Appellee-Defendant.

Appeal from the United States Magistrate
for the Eastern District of Virginia, Norfolk/Newport News Division
James E. Bradberry, Magistrate Judge

**MEMORANDUM OPINION AND ORDER**

      Appellee-Defendant Justin Clark was convicted of driving while intoxicated in a federal enclave under a Virginia statute assimilated as federal law pursuant to the Assimilated Crimes Act.  The offense carries a mandatory minimum prison term of twenty days, which the Magistrate Judge who sentenced Clark did not impose.  The Government appealed the sentence to this Court contending that the Magistrate Judge violated the law by not imposing the mandatory minimum sentence.  Clark retorts that federal courts have discretion not to impose mandatory minimum sentences contained in state statutes assimilated as federal law or, alternatively, that the sentence imposed satisfies the mandatory minimum pursuant to the Schedule of Substitute Punishments

1

contained in the United States Sentencing Guidelines.

For the reasons that follow, the Judgment of December 13, 2004 is **VACATED** and this matter is **REMANDED** to the United States Magistrate Judge with instructions to re-sentence the Defendant in accordance with this Memorandum Opinion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.      Factual Background

The facts of this case are not in dispute. Appellee-Defendant Justin R. Clark attempted to gain admittance to the Fort Eustis Army Post in his motor vehicle at approximately 3:00 a.m. on November 6, 2004. Clark's vehicle was stopped and approached by a civilian security officer stationed at the gate to conduct routine inspections upon entry to the base. Upon approaching Clark, the officer detected the smell of alcohol and therefore requested assistance from a military police officer. A military police officer confirmed the smell of alcohol on Clark's breath and conducted a series of field sobriety tests on which he performed poorly. Clark was thereafter escorted to a military police station where a breath test was administered. The test revealed that his blood alcohol was 0.13 grams of alcohol per 210 liters of breath.

   B.      Procedural Posture

Virginia Code § 18.2-266, assimilated under the Assimilative Crimes Act, 18 U.S.C. § 13, makes it a misdemeanor to drive while under the influence of 0.08 grams or more per 210 liters of breath of alcohol. Clark was charged with misdemeanor driving while intoxicated in

violation of Va. Code § 18.2-266.[1] Since Clark has a prior conviction for driving while intoxicated,[2] the present offense is punishable by "a mandatory minimum fine of $500 and by confinement in jail for not less than one month nor more than one year. Twenty days of such confinement shall be a mandatory minimum sentence." Va. Code § 18.2-270(B)(1).

Clark waived his right to have his case heard by a federal district judge, 18 U.S.C. § 3401(b), and pled guilty to driving while intoxicated, a second offense, on December 13, 2004 before a United States magistrate judge. The Magistrate Judge determined that Clark suffered from Posttraumatic Stress Disorder ("PTSD") stemming from a tour in the ongoing conflict in Iraq and opted to impose an alternative sentence to the mandatory minimum prison term of twenty days. Clark was sentenced to one year of probation and ordered to remain on Fort Eustis for six months, directed to participate in treatment for PTSD, fined $500.00, and his motor vehicle operator's license was suspended for three years. Judgment at 2-4, Doc No. 9 (filed Dec. 16, 2004). The Magistrate Judge provided the following statement of reasons for not imposing the mandatory minimum sentence:

> The problem in this case is not as much the alcohol as it is posttraumatic stress disorder.
> Now, I'm considerably older than you are. I spent four years on active duty, from 1966 to 1970. That was another invasion of U.S. military occurring at that point in time. Posttraumatic stress disorder was something that we were just beginning to grasp. I dealt with enough PTSD cases in more than 20 years in private practice, and since I have been on the bench, to have a fairly good idea of what's involved, and I will tell you that you have a very bleak future unless you take very, very seriously what you have – . . . – and you diligently pursue treatment for it. You will be a menace to everyone who loves you

---

[1] Clark was also charged with driving while his motor vehicle license was under suspension. Va. Code § 46.2-301. That charge was ultimately dropped.

[2] Clark was convicted for driving while intoxicated on October 12, 2004 in the Newport News General District Court.

and cares for you from now on, and you will not have much of a life, unless you pursue it seriously.

This is what I am inclined to do, and you tell me if you agree. If you don't agree, then I'll go ahead and shape the punishment the way I think it should be shaped.

I am inclined not to give you one day of that jail time which is mandatorily required. Somebody doesn't like it, appeal me. But it's going to be conditioned on the fact that you remain on base, on base, for the next six months. You'll be on probation for a year, but for the next six months stay on base. . . .

Tr. at 11-12.

The Government appealed the Magistrate Judge's judgment on the ground that it violated the law because it did not include the mandatory minimum 20-day prison term required by Va. Code § 18.2-270(B)(1). The Court has reviewed briefing from both parties and entertained oral argument on Tuesday, March 15, 2005. The appeal is ripe for judicial resolution.

### II.     SCOPE OF REVIEW

A federal district court has jurisdiction to review an appeal by the government of a sentence imposed by a United States magistrate judge that "was imposed in violation of the law." 18 U.S.C. § 3742(b)(1). The sentence is scrutinized under the same standard that an appellate court would apply to a sentence imposed by a federal district court. See United States v. Welsh, 384 F. Supp. 531, 532 (D. Kan. 1974) ("The scope of our review is not trial de novo, but shall be the same as an appeal from the District Court to the Court of Appeals."); cf. United States v. Moore, 586 F.2d 1029, 1032 (4th Cir. 1978); 18 U.S.C. § 3742(h). As this appeal involves the application of law to an undisputed set of facts, review is *de novo*. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

**III.    DISCUSSION**

    **A.    The Assimilative Crimes Act**

In Virginia, a second offense of driving while intoxicated is punishable by "a mandatory minimum fine of $500 and by confinement in jail for not less than one month nor more than one year.  Twenty days of such confinement shall be a mandatory minimum sentence." Va. Code § 18.2-270(B)(1).  The Government contends that the Magistrate Judge violated the law by not sentencing Clark to at least twenty days in prison.

The Virginia offense of driving while intoxicated is assimilated as federal law in certain federal enclaves within the Commonwealth, including Fort Eustis, see 18 U.S.C. § 7, pursuant to the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13.  According to the ACA, a person who commits a crime within a federal enclave, which is not otherwise "punishable by any enactment of Congress, [but which] would be punishable if committed . . . within the jurisdiction of the State . . . in which [the enclave] is situated . . . shall be guilty of a like offense and *subject to a like punishment*."  18 U.S.C. § 13(a) (emphasis added).  The primary issue for decision is whether the ACA's directive to impose a "like punishment" requires a sentencing judge to comply with the mandatory minimum sentence imposed by an assimilated statute.  It does.

Clark contends that the "like punishment" clause of the ACA affords federal courts discretion to disregard a mandatory minimum sentence contained in an assimilated statute in order to give effect to federal sentencing policy.  It is the case that "the term 'like punishment,' as used in the ACA, requires only that the punishment be similar, not identical." United States v. Pierce, 75 F.3d 173, 176 (4th Cir. 1996).  Congress deliberately selected the word "like" instead of the word "same" to ensure that federal sentencing policy is not subsumed by the policies

underlying assimilated state statutes. See United States v. Kelly, 989 F.2d 162, 164 (4th Cir. 1993). However, it is settled law in this Circuit that "the 'like punishment' requirement of the [ACA] mandates that federal court sentences for assimilated crimes must fall within the minimum and maximum terms established by state law, and that within this range of discretion federal judges should apply the Sentencing Guidelines to the extent possible." United States v. Young, 75 F.2d 147, 150 (4th Cir. 1990); see also United States v. Harris, 27 F.3d 111, 115 (4th Cir. 1994) ("A federal judge, like his state counterpart, has discretion to impose a sentence within the statutory limits."); United States v. Montigue, ___ F. Supp.2d ___, ___, 2005 WL 400397, *1 (E.D. Va. Feb. 16, 2005) (Miller, USMJ) ("[W]hen a state sentencing law calls for a mandatory minimum sentence, this Court must impose that mandatory minimum.")

Though federal courts are confined by the minimum and maximum allowable punishments contained in an assimilated statute, the United States Sentencing Guidelines also apply. 18 U.S.C. § 3551(a). The Guidelines do not contain a provision for sentencing a defendant convicted of a misdemeanor offense for driving while intoxicated, nor do they contain a pertinent analogue provision. In such an instance, the Guidelines direct federal courts to rely on the statutory sentencing factors contained in 18 U.S.C. § 3553(b). U.S.S.G. § 2X5.1. These factors include, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] (3) the kinds of sentences available; . . .

18 U.S.C. § 3553(b). Clark contends that § 3551(a) renders the minimum and mandatory

sentences contained in assimilated statutes optional and directs judges to impose a sentence based on the above factors and other discernible federal sentencing policy. He argues that the sentence imposed by the Magistrate Judge fulfills the statutory objectives for punishment and therefore should not be reversed.

Whether the sentence imposed by the Magistrate Judge fulfills the sentencing objectives contained in 18 U.S.C. § 3553(b) is only relevant after first ensuring that the sentence complies with the mandatory minimum contained in the assimilated state statute. See Montigue, 2005 WL 400397 at *1 ("After adhering to the state statutory limits . . . federal sentencing policy prevails."). The United States Court of Appeals for the Fourth Circuit has rejected the position that the mandatory consideration of the Guidelines affords federal courts the discretion to disregard mandatory minimum or maximum sentences, holding that, "[s]ince Congress clearly recognized that both § 13(a) and § 3551(a) are 'capable of co-existence,' courts are obliged to regard 'each as effective.'" Harris, 27 F.3d at 115 (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018 (1984)). Accordingly, though assimilated state statutes demarcate the lower and upper bounds of a sentence, federal sentencing policy as reflected by the Sentencing Guidelines prevails in affixing a sentence within those bounds. See id. ("[S]tate law may provide the mandatory minimum or maximum sentence, but the federal sentencing guidelines determine the sentence within these limits."). A sentencing judge should consider the criteria set forth in § 3553(b), but only after adhering to the mandatory minimum sentence required by the assimilated state statute.

Clark further asserts, correctly, that assimilated criminal statutes can be selectively incorporated as federal law in limited instances when it is necessary "to promote federal policy."

Kelly, 989 F.2d at 164; see also United States v. Teran, 98 F.3d 831, 835 (5th Cir. 1996) ("Conflict between federal sentencing policy and state sentencing law has also been found to be a valid basis for exceptions to full assimilation of state law."). In Kelly, for instance, the United States Court of Appeals for the Fourth Circuit held that a maximum penalty of eighteen months imprisonment contained in an assimilated state statute punishing misdemeanor theft did not apply in cases before a United States magistrate judge because imposing the maximum sentence would cause the matter to come outside the jurisdiction of the Magistrate. Id.; see also 18 U.S.C. §§ 1 (now repealed) and 3401. Thus, a magistrate judge must adhere to federal laws limiting its jurisdiction, even when an assimilated state statute would otherwise afford it more authority. Id. Selectively incorporating the statute involved in Kelly was necessary "to promote the efficiency of our federal criminal process by permitting offenses of the type herein involved to be tried by a [m]agistrate [j]udge and by not requiring all such offenses to be tried before a federal [d]istrict [j]udge." Id.

Kelly carves out an exception rather than announcing a blanket rule: federal courts may selectively incorporate an assimilated state statute only if it poses a direct conflict with federal law or sentencing policy. Kelly did not hold, nor does it lend any support for a general rule, that federal courts may disregard a mandatory minimum sentence or go beyond a maximum allowable sentence under an assimilated state statute. In fact, all Kelly did was superimpose a maximum allowable sentence less than that allowed by the assimilated state statute to preserve the jurisdiction of the magistrate judge. It did not condone disregarding a mandatory minimum or maximum sentence. Clark has not pointed to a single federal policy that Virginia's driving while intoxicated offense and its associated penalties conflict with. There is no justification for casting

8

aside the mandatory minimum sentence prescribed by Virginia law. Clark is therefore subject to the mandatory minimum sentence of twenty days imprisonment as required by Va. Code § 18.2-270(B)(2).

### B. Substitute Punishment

Clark alternatively argues that, even if federal courts are bound by the mandatory minimum penalty contained within Va. Code § 18.2-270(B)(2), the sentence imposed by the Magistrate Judge is a lawful substitute for imprisonment under the Schedule of Substitute Punishments contained in U.S.S.G. § 5C1.1(e). Specifically, he contends that the condition that he remain on Fort Eustis for six months qualifies as home detention. See id. § 5C1.1(e)(3). The Government retorts that the Schedule of Substitute Punishments is not available because the Virginia Code expressly defines a "mandatory minimum" punishment as "mean[ing], for purposes of imposing punishment upon a person convicted of a crime, that the court shall impose the entire term of confinement. . . . The court shall not suspend in full or in part any punishment described as mandatory minimum punishment." Va Code. § 18.2-12.1. Additionally, the Government points to a Virginia Court of Appeals case holding that a mandatory minimum prison term cannot be replaced by electronic monitoring, which the Government contends prohibits utilizing the Schedule of Substitute Punishments. See Cuffee-Smith v. Commonwealth, 39 Va. App. 476, 481-83, 574 S.E.2d 294, 296-97 (Va. Ct. App. 2002).

Clark is correct that Virginia law prohibiting a substitute for imprisonment does not apply to federal courts. The Schedule of Substitute Punishments is available to federal courts to fashion a sentence that comports with the requirements of assimilated state statutes and fulfills federal sentencing expectations contained in the Sentencing Guidelines. However, confinement

9

to Fort Eustis does not qualify as home detention under the United States Sentencing Guidelines.

### 1. The Schedule of Substitute Punishments

While the statutory minimum and maximum penalties prescribed by the assimilated Virginia statute constrain the range of permissible punishments a federal court may impose, statutes expressing Virginia sentencing policies do not override the clearly expressed federal policies contained in the United States Sentencing Guidelines. "The rationale supporting this principle is that a federal prisoner, though convicted and sentenced in accordance with § 13, should be subject to federal correctional policies." Harris, 27 F.3d at 115. Applying Virginia sentencing policy expressed in disparate state statutes and case law, unlike applying the mandatory minimum punishment contained in a Virginia statute assimilated as federal law, would lead to "confining two classes of prisoners in federal prisons" and undermine the policies that undergird the United States Sentencing Guidelines. Id. Congress intended for the ACA and the Sentencing Guidelines to co-exist and for federal courts to apply both when sentencing defendants convicted of assimilated crimes. Id. As explained above, "[a]fter adhering to the state statutory limits . . . federal sentencing policy prevails." Montigue 2005 WL 400397 at *1. Thus, the Schedule for Substitute Punishments contained in the Guidelines is applicable.

### 2. Home Detention

While the Court agrees that the Schedule for Substitute Punishments, as well as similar Guidelines provisions expressing federal sentencing policy, applies to sentences imposed under the ACA, the Court rejects Clark's contention that confinement to Fort Eustis qualifies as home confinement. The Sentencing Guidelines allow "[o]ne day of home detention [to be substituted] for one day of imprisonment." U.S.S.G. § 5C1.1(e)(3). According to the application notes to §

5F1.2, a separate Guideline provision concerning home detention with respect to a probationary sentence, "'[h]ome detention means a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation officer." U.S.S.G. § 5F1.2, App. Note 1. Ordering Clark to remain on Fort Eustis for six months does not restrict him to his place of residence, nor is it possible to ensure that he actually remains within the confines of the Fort.

Fort Eustis spans approximately 8,228 acres (nearly thirteen square miles) in Southern Virginia on the Northern Bank of the James River and the Western Sector of the City of Newport News. "Fort Eustis and Fort Story Facts and Figures FY04," compiled by the Fort Eustis Public Affairs Office for Fiscal Year 2004. It is populated by more than 45,000 active and inactive military personnel and their families, military retirees, students, and civilians who live, work, attend school, and utilize its facilities. Id. Sprawling across the Fort are 101 miles of paved roads, 23 miles of rail lines, a 349-acre airfield, 952 units of family homes, and 4,176 spaces to house troops. Id. The Fort also contains a 69.5-acre port on the James River. In population and expanse, Fort Eustis is larger than many cities in the Commonwealth of Virginia. See United States Census Bureau, "Virginia Quick Facts," available at http://quickfacts.census.gov/qfd/states/51/5135000.html (last viewed March 15, 2005). In fact, the website for Fort Eustis aptly describes it as "a city in itself." Fort Eustis Website, available at http://www.eustis.army.mil/main.htm (last viewed March 15, 2005). Like almost any other city, Fort Eustis is "complete with a shopping mall, bank, credit union, post office, hospital, chapel, a USO and Red Cross, and many other facilities. There is plenty to do during off-duty hours. Whatever your interest – crafts, theater, libraries or sports – they can be found [at Fort Eustis].

. . . Activities abound to help you fill every moment." Id.

Ordering a defendant to remain on Fort Eustis is hardly distinct from ordering him to remain in Newport News, Norfolk, or Virginia Beach. Indeed, it bears little resemblance to confinement at all, and much less home detention. A necessary element of detention is that the person detained not have access to activities and facilities to help fill every moment. On the contrary, the essence of detainment is that there not be some activity to fill every moment. There is nothing stopping a person detained on Fort Eustis, as opposed to his home, from attending a social at the USO, spending a Saturday afternoon at the shopping mall, or taking in a performance at the theater. What is more, there is no way that any court or probation officer can ensure that a person ordered to remain on Fort Eustis actually stays there. When a person is free to go where he pleases, he is not detained. Confinement to Fort Eustis is not confinement at all.

### IV.   CONCLUSION

For the foregoing reasons the Judgment of December 13, 2004, Doc. No. 9 (filed Dec. 16, 2004), is **VACATED** and this matter is **REMANDED** to the United States Magistrate Judge. The United States Magistrate Judge is **DIRECTED** to re-sentence the Defendant in accordance with this Memorandum Opinion. On remand, the Magistrate Judge is bound by the mandatory minimum sentence contained in Va. Code § 270(B)(1), but he may rely on the United States Sentencing Guidelines, and in particular the Schedule of Substitute Punishments, U.S.S.G. § 5C1.1(e), to impose a sentence that gives full effect to both the Assimilative Crimes Act and the

Sentencing Reform Act of 1984.[3]

The Clerk of the Court is **DIRECTED** to provide a copy of this Memorandum Opinion to the Assistant United States Attorney, Federal Public Defender, and United States Magistrate Judge responsible for this matter.

  **IT IS SO ORDERED.**


              _____/s/_____
              UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

March 16 , 2005

---

[3] For instance, if the Magistrate Judge determined on remand that employment and the continuance of day-to-day activities are necessary for Clark's rehabilitation, he may order Clark to serve his prison sentence on weekends only. U.S.S.G. § 5C1.1(e)(1). The Magistrate Judge may also impose a term of community confinement, id. § 5C1.1(e)(2), or home detention. Id. § 5C1.1(e)(3).